# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **U.S. House of Representatives,** | Plaintiffs, |  |
| v. | : |  |
| Steven T. Mnuchin, et. al, |  |  |
| *Defendants.* | : |  |
| and |  |  |
| Robert A. Heghmann, | : |  |
|  | **Docket Number:** |  |
| *Plaintiff,* |  |  |
| v. | : | 1:19-cv-00969 |
| United States House of Representatives, Barack H. Obama, Joseph Biden, E. Scott Lloyd, Director, Office of Refugee Resettlement, Kathleen Sebelius, Past Secretary, Department of Health and Human Services, Alejandro Mayorkas, Director, U.S. Citizenship and Immigration Services, Jeh Johnson, Past Secretary, Department of Homeland Security, Robert R. Redfield, Director Centers for Disease Control and Prevention, Tom Frieden, past-Director, Centers for Disease Control and Prevention, Francis S. Collins, National Institute of Health, and Richard V. Spencer, Secretary, U.S. Navy, | : : : : : | MOTION TO INTERVENE MEMORANDUM OF LAW<br><br>May 8, 2019 |



RECEIVED Mail Room — MAY 10 2019 — Angela D. Caesar, Clerk of Court, U.S. District Court, District of Columbia

*Defendants.* :

# PLAINTIFF – INTERVENOR ROBERT A. HEGHMANN'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO INTERVENE

Plaintiff Intervenor Robert A. Heghmann respectfully submits this Memorandum of Law in support of his Motion to Intervene in this action filed by U.S. House of Representatives against Defendant Steven T. Mnuchin. The Plaintiff - Intervenor moves pursuant to Federal Rule of Civil Procedure 24 to intervene as of right, or alternatively, by permission to assert claims against the Defendants, the Democratic Congressional Leaders and others under the United Nations' Convention on the Prevention and Prosecution of Genocide and 18 U.S.C. Sec. 1091.

## PRELIMINARY STATEMENT

The Complaint filed by the U. S. House of Representatives is a political, not a legal, document. Under the statutes in question the President has virtually unfettered discretion to declare a State of Emergency. What the currently Democratic Party controlled House of Representatives seeks to do on behalf of the Democratic Party is to undermine the public's confidence in the President while making political arguments against the Presidents exercise of his discretion in advance of the 2020 elections. As such it is subject to dismissal as a political question. *Coleman v. Miller*, 307 U.S. 433, 446 (1939); *Bowsher v. Synar*, 478 U.S. 714, 721 (1986). All the while American children are being crippled and dying from strains of Polio for which the Nation has no vaccine. To waste one to two years on a political question case while American children are dying would be a human tragedy.

American children are being crippled and dying as a result of the mass immigration of Latin American children carrying two strains of Polio not previously seen in the United States and which are not prevented by the Sabine vaccine. This Court has the jurisdiction and power under the U.N. Convention on Genocide Prevention and Prosecution to end this travesty and it must exercise that power on behalf of the children of America.

## Statement of Facts

Candidate Donald Trump inspired attendees at his campaign rallies to chant "Build that wall." Although the border with Mexico is approximately 2,000 miles long, he stated that the wall along that border would be 1,000 miles long. In 2017, Congress appropriated $1.6 billion for new and replacement fencing along the border, but not for the wall prototypes requested by the President. In 2018, the President asked Congress to appropriate $5.7 billion for construction of 234 miles of steel border wall. Congress did not pass appropriations bills including those requested funds. On December 21, 2018, the President allowed portions of the federal government to shut down, rather than approve an appropriations bill that did not include the funding he requested for a border wall.

On February 14, 2019, Congress passed an appropriations bill that provides $1.375 billion for 55 miles of new fence along the border in Texas. Despite the President's repeated requests for $5.7 billion for 234 miles of steel wall, and despite the President's earlier decision allowing the government to shut down because Congress declined to appropriate money for that wall, Congress again appropriated no money for a steel wall.

On February 15, 2019, the President signed the appropriations bill into law. That same day, he signed a proclamation declaring a national emergency under the National Emergencies Act

(NEA). The NEA provides: "With respect to Acts of Congress authorizing the exercise, during the period of a national emergency, of any special or extraordinary power, the President is authorized to declare such national emergency." 50 U.S.C. § 1621. The Congress passed legislation designed to prevent the President from using funds to build the wall under the Declaration of National Emergency. The President Vetoed this legislation and the Plaintifs then instituted this litigation.

## THE CRITICAL ISSUE – IS THERE A NATIONAL EMERGENCY?

According to the Plaintiff no national emergency exists with respect to immigration across the southern border of the United States. Complaint page 6 and page 34, par. 79. As they point out, migration through the southern border is not sudden or unforeseen. Significant immigration across the border dates back more than 100 years, and the current rate is lower than the average over the past decade. Combining several methods of estimating unlawful border crossings, the Department of Homeland Security (DHS) calculated a "91 percent decline" in such crossings over the period 2000 to 2016: "1.8 million aliens successfully crossed the border in 2000, versus 170,000 in 2016." DHS Office of Immigration Statistics, Efforts by DHS to Estimate Southwest Border Security between Ports of Entry 17 (Sept. 2017) ("DHS 2017 Estimate"). CBP reported a 76 percent decline in the number of apprehensions (which is one measure of illegal border crossings) between the peak in 2000 and 2018. *Compare* CBP, *Southwest Border Migration FY2019*,[1] *with* U.S. Border Patrol, *Southwest Border Sectors: Total Illegal Alien Apprehensions by Fiscal Year*.

Based upon these and other statistics, the Plaintiffs conclude there is no "National Emergency" and therefore this Court should block the President from fulfilling his campaign pledge and build the Wall. From a purely Democratic Party perspective, this view is reasonable.

---

The fact is that since 2014 the Obama - Biden Administration, the Democrats in Congress and their allies in the Federal Bureaucracy have been committing Genocide against members of the Republican Party is of little concern to them. They probably even cheer the efforts of the Swamp on behalf of Democrats everywhere to eliminate Republicans using Polio and a pernicious form of EV-D68 which attacks the ability of Republican Seniors to breathe and function. Fortunately, the United Nations Convention on the Prevention and Prosecution of Genocide and 18 U.S.C. Sec. 1091 take a dimmer view of crippling or killing Republicans just because they are Republicans.

There is a radical difference between migration since 2013 and all migration that took place prior to that date. Prior to 2013 in migration to the United States came primarily from Mexico. This was due to economic conditions in Mexico. The North American Free Trade Alliance (hereinafter "N.A.F.T.A.") was aimed in part to remove the economic stimulus of Mexicans to immigrate by creating economic opportunities in Mexico. The success of N.A.F.T.A. is reflected in some of the statistics referred to by the Plaintiffs in their argument against a National Crisis. Since 2013, the immigration issue has drastically changed, a fact totally ignored by the Plaintiffs.

In 2013 the United States began to see large numbers of immigrants from Honduras, Guatemala and El Salvador crossing the U.S. Southern Border. This may have been due to drug violence in those countries but for whatever reason it was a drastic increase. The U.S. Department of Defense (hereinafter "D.O.D.") perhaps in response to this new migration commissioned a Study on Influenza among Latin American Countries. This research was conducted at Naval Medical Unit No. 6 in Lima, Peru. The research was done under the supervision of the U.S. Navy and the National Institute of Health.

What the research showed was that residents of Honduras, Guatemala and El Salvador carry a pernicious form of EV – D68, a virus, which is much stronger and more damaging than the type of EV – D68 previously discovered in the United States. More importantly, children under 8 years of age carry two strains of Polio never before seen in the United States. Because these strains were not previously seen in the U.S., the Sabine Polio Vaccine does not protect American children from this new Polio.

Rather than taking steps to protect the people of the United States, specifically Seniors and children, from these new immigrants carrying this new virus and Polio, in 2014 President Obama issued an Executive Order guaranteeing Political Asylum to immigrants from Honduras, Guatemala and El Salvador triggering the mass caravans approaching our Southern Border. The result is virtually unchecked entry of illegal immigrants carrying EV-D68 and Polio into the United States.

In order to protect Democrats from these new illnesses, Democratic allies in the Defendant bureaucracies took control of re-settling children under 8 who were the principal carriers of Polio and re-located them to staunchly Republican voting districts. This is why Polio, once the scourge of the Cities, is now seen almost exclusively in the suburbs.

Since 2014 the U.S. has gone from 120 confirmed cases of Polio to over 650 in 2018 and the number continues to grow. In fact, Polio among American children is tripling every two years since 2014. Infants and children up to age 6 have been paralyzed and several have died. There is no end in sight and until the Southern Border is secured, there will be no end. At the same time Seniors are being forced to deal with a vicious form of Chronic Obstructive Pulmonary Disease (C.O.P.D.) which can only be made worse as they are exposed to more immigrants carrying Latin

American EV-D68. Rather than blocking President Trump from building the Wall, this Court should protect him while he takes the action necessary to protect the American public.

More importantly, those responsible for knowingly bringing these new strains of Polio to the United States which has paralyzed and killed American infants and children must be ferreted out and forced to pay the price for their criminal acts. Many should be sent to prison while others should be sent to the Gallows. This is why the Plaintiff-Intervenor has filed his Motion to Intervene in this action.

### ARGUMENT I.

*Robert A. Heghmann should be Permitted to Intervene as Matter of Right.*

Federal Rule of Civil Procedure 24(a)(2) provides that a court must permit intervention on timely application by anyone: (1) who "claims an interest relating to the property or transaction that is the subject of the action," and (2) whose interest may be "impair[ed] or impede[d]" by disposition of the action, "unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). This Rule is "broadly construed in favor of potential intervenors," who must be permitted to intervene if: "1) the application was timely filed; 2) the applicant possesses a substantial legal interest in the case; 3) the applicant's ability to protect its interest will be impaired without intervention; and 4) the existing parties will not adequately represent the applicant's interest." *Ohio State Conference of NAACP v. Husted*, 588 F. App'x 488, 490 (6th Cir. 2014) (citation omitted); see *Grutter v. Bollinger*, 188 F.3d 394, 397-98 (6th Cir. 1999) (same). The Plaintiff-Intervenor meets each of these requirements for intervention as of right. He is as much at

risk from Latin American Polio as children are. In addition, the Plaintiff believes he has already suffered health difficulties resulting from exposure to Latin American EV – D68.

A. Plaintiff-Intervenor's Motion is Timely.

The timeliness of an application for intervention is evaluated "in the context of all relevant circumstances," including: (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention. *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990); see *United States v. City of Detroit*, 712 F.3d 925, 930-31 (6th Cir. 2013) (same). Here, the case is still at the earliest stage. The Defendants have neither answered nor moved to dismiss. No scheduling order has been entered. No factual or legal issues have been litigated. And the parties will not be prejudiced by the intervention.

B. The Plaintiff-Intervenor Has a Substantial Legal Interest in the Subject Matter of This Case.

The United States Court of Appeals for the Sixth Circuit subscribes to a "rather expansive notion of the interest sufficient to invoke intervention of right." *Grutter*, 188 F.3d at 398 (citation omitted); see also *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6thCir. 1987) ("'[I]nterest' is to be construed liberally."). No specific legal or equitable interest is required, see Grutter, 188 F.3d at 398, and even "close cases" should be "resolved in favor of recognizing an interest under Rule 24(a)," *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1247 (6th Cir.

1997). This litigation directly implicates the Plaintiff – Intervenor's interest in enforcing the United Nations Convention against Genocide.

C. Intervention in this Case is Necessary to Protect the Plaintiff – Intervenor's Interest.

Under the third intervention prong, "a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied." Miller, 103 F.3d at 1247. "This burden is minimal," and can be satisfied if a determination in the action may result in "potential stare decisis effects." Id.; see also *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 900 (9th Cir. 2011) ("[I]ntervention of right does not require an absolute certainty that a party's interest will be impaired").

The disposition of this case impacts the Plaintiff – Intervenor's interest in eliminating a pernicious form of Latin American (hereinafter "LA") EV-D68 and two strains of Polio from illegal immigrants crossing the Southern Border of the United States. The Plaintiff – Intervenor has already been impacted by LA EV – D68. In the Spring and Summer of 2018 the Plaintiff – Intervenor, an athletic Senior Citizen who had never smoked, was stricken by a vibrant form of C.O.P.D. It was not until he read a research paper on EV – D68 did he realize that he had been a victim of the Defendants' failure to secured our Southern Border and LA EV-D68. Continuous exposure to LA EV-D68 as more and more illegal immigrants enter the United States threatens to make his condition worse and may even cause his death. In addition, even as an adult he is at risk from Latin American Polio.

D. The Existing Parties Cannot Protect the Interest of the United States.

The Plaintiff – Intervenor carries a minimal burden to show that the existing parties to this litigation inadequately represent the United States' interests. *Jordan v. Mich. Conference of Teamsters Welfare Fund*, 207 F.3d 854, 863 (6th Cir. 2000). A potential intervenor "need not

prove that the [existing parties'] representation will in fact be inadequate, but only that it 'may be' inadequate." Id. (citations omitted) (emphasis added); see also *Davis v. Lifetime Capital, Inc.,* 560 F. App'x 477, 495 (6th Cir. 2014) ("The proposed intervenor need show only that there is a potential for inadequate representation.") (citation omitted) (emphasis in original). The Plaintiff – Intervenor satisfies this burden.

The Plaintiff – Intervenor has a personal interest in enforcing the Genova Convention to advance the safety of the public by ending illegal immigration through our Southern Border as well as protecting other members of the public from the effects of LA EV-D68 and Polio. Not only is this interest not shared by the other parties to this litigation but for pure political gain, the Defendants want to continue illegal immigration regardless of the health safety impact upon the general public, especially children.

**Argument II**

*The Plaintiff - Intervenor Should Be Allowed to Intervene by Permission*

The Plaintiff - Intervenor may also be granted leave to intervene by permission. Rule 24(b)(2) permits intervention on timely motion by a governmental officer or agency where "a party's claim . . . is based on: (A) a statute . . . administered by the officer or agency; or (B) any regulation [or] requirement . . . issued or made under the statute or executive order." Fed. R. Civ. P. 24(b)(2). The Court may likewise permit intervention by anyone who has "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "In exercising its discretion," a court "must consider whether intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

First, for the reasons detailed in Section I(A), supra, the Motion to Intervene is timely. Second, if required to file a separate action to protect the public interests, see Section I(D), supra, the Plaintiff Intervenor United States would assert issues that would require the Court to resolve questions of fact and law that are common to—and in some instances, identical to—questions raised by the existing parties.

For the foregoing reasons, the United States respectfully requests that the Court grant the Plaintiff – Intervenor's Motion to Intervene.

Respectfully Submitted,

Robert A. Heghmann
Plaintiff – Intervenor
933 Wyden Drive
Virginia Beach, VA 23462
(603) 866 – 3084

Bob_Heghmann@Reagan.com

CERTIFICATION

In addition to service electronically through the ECF System, the Plaintiff-Intervenor served a copy of this Motion upon Attorneys currently appearing via e-mail at the following addresses on May 8, 2019.

Kristin A. Shapiro
Kristin.Shapiro@mail.house.gov

Andrew I. Warden

Andrew.Warden@usdoj.gov

Daniel Isaac Weiner

Daniel.Weiner@NYU.Edu

Max S. Wolfson

Wolson@NILC.org

_/s/ signature_