**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES HOUSE OF REPRESENTATIVES,**<br><br>**Plaintiff,**<br><br>v.<br><br>**STEVEN T. MNUCHIN,** *in his official capacity as Secretary of the United States Department of the Treasury, et al.*,<br><br>**Defendants.** | No. 1:19-cv-0969-TNM |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' OPPOSITION
TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION
BY *AMICUS CURIAE* REP. ANDY BARR**

CHRISTOPHER J. HAJEC
Immigration Reform Law Institute
25 Massachusetts Ave. NW, Suite 335
Washington, DC 20001
(202) 232-5590
chajec@irli.org

LAWRENCE J. JOSEPH
Law Office of Lawrence J. Joseph
1250 Connecticut Ave. NW, Suite 700-1A
Washington, DC 20036
(202) 355-9452
ljoseph@larryjoseph.com

*Counsel for Rep. Andy Barr*

# TABLE OF CONTENTS

Table of Contents ........................................................................................................... ii

Table of Authorities ...................................................................................................... iii

Identity and Interest of *Amicus Curiae* ....................................................................... 1

Introduction ................................................................................................................... 1

Statement of Facts ......................................................................................................... 2

Argument ....................................................................................................................... 2

I.    This Court lacks jurisdiction to grant the House's requested relief. ...................... 2

    A.    This Court lacks statutory subject-matter jurisdiction for this action.
        ..................................................................................................................... 2

        1.    Federal-question jurisdiction does not extend to settled questions. ............................................................................................ 3

        2.    The House is not the "United States" for purposes of 28 U.S.C. § 1345 ................................................................................... 3

    B.    This action is a non-justiciable political question. ....................................... 5

    C.    The United States has not waived sovereign immunity for this action. ........................................................................................................... 6

        1.    Congress has not enacted judicially manageable standards to review this matter. ......................................................................... 7

        2.    Some of the challenged actions are not final and, thus, not currently subject to judicial review. .............................................. 8

        3.    Sovereign immunity protects our democracy from government by judicial diktat. .............................................................. 8

II.    The House does not meet the *Winter* criteria for a preliminary injunction. ........ 9

    A.    The House is unlikely to prevail on the merits. ......................................... 10

        1.    This Court lacks jurisdiction to rule for the House on the merits .................................................................................................. 10

        2.    The House is unlikely to prevail on its claims under § 8005. ................... 11

        3.    The House is unlikely to prevail under § 2808. ............................ 13

    B.    The House will not suffer irreparable harm. .............................................. 14

    C.    The balance of equities favors the Government. ....................................... 14

    D.    The public interest favors the Government. ............................................... 14

III.    The House is not entitled to a preliminary injunction without addressing the issue of a security bond. ................................................................................ 15

Conclusion ................................................................................................................... 16

## TABLE OF AUTHORITIES

### CASES

*Alden v. Maine,*
    527 U.S. 706 (1999)..........................................................................................9

*Allen v. Wright,*
    468 U.S. 737 (1984)..........................................................................................5

\* *Arbaugh v. Y & H Corp.,*
    546 U.S. 500 (2006)..........................................................................................3

*Ass'n of Am. Physicians & Surgeons v. Sebelius,*
    746 F.3d 468 (D.C. Cir. 2014)..........................................................................3

*Bender v. Williamsport Area Sch. Dist.,*
    475 U.S. 534 (1986)..........................................................................................2

\* *Bowsher v. Synar,*
    478 U.S. 714 (1986)..........................................................................................3

*Burford v. Sun Oil Co.,*
    319 U.S. 315 (1943)........................................................................................15

\* *Campbell v. Clinton,*
    203 F.3d 19 (D. C. Cir. 2000)..........................................................................11

*Chen v. Gen. Accounting Office,*
    821 F.2d 732 (D.C. Cir. 1987)..........................................................................4

\* *Citizens to Preserve Overton Park, Inc. v. Volpe,*
    401 U.S. 402 (1971)..........................................................................................7

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983)..........................................................................................10

*Council of and for the Blind of Delaware County Valley, Inc., v. Regan,*
    709 F.2d 1521 (D.C. Cir. 1983) (*en banc*)........................................................8

*Dep't of Army v. Blue Fox, Inc.,*
    525 U.S. 255 (1999)..........................................................................................6

*EEOC v. Hernando Bank, Inc.,*
    724 F.2d 1188 (5th Cir. 1984) ..........................................................................5

*FDIC v. Meyer,*
    510 U.S. 471 (1994)..........................................................................................6

*Gray v. Powell,*
    314 U.S. 402 (1941)..........................................................................................8

*Great Northern Life Ins. Co. v. Read,*
    322 U.S. 47 (1944)............................................................................................9

*Greider v. Woods*,
   177 F.2d 1016 (10th Cir. 1949) ........................................................................5

*Hagans v. Lavine*,
   415 U.S. 528 (1974).........................................................................................3

*Heckler v. Chaney*,
   470 U.S. 821 (1985).........................................................................................8

*Heckler v. Lopez*,
   464 U.S. 879, 886 (1983)...............................................................................14

*Herwald v. Schweiker*,
   658 F.2d 359 (5th Cir. 1981) .........................................................................10

\*   *INS v. Chadha*,
   462 U.S. 919 (1983).........................................................................................9

*Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*,
   456 U.S. 694 (1982).........................................................................................2

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994).........................................................................................2

*Lane v. Pena*,
   518 U.S. 187 (1996).........................................................................................6

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992).......................................................................................13

*Luther v. Borden*,
   48 U.S. 1 (1849)...............................................................................................6

*Monsanto Co. v. Geertson Seed Farms*,
   561 U.S. 139 (2010).......................................................................................14

*Muskrat v. United States*,
   219 U.S. 346 (1911).........................................................................................5

\*   *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*,
   551 U.S. 644 (2007).......................................................................................12

*Nat'l Wildlife Fed'n v. Burford*,
   835 F.2d 305 (D.C. Cir. 1987) ......................................................................10

*Panama Canal Co. v. Grace Line, Inc.*,
   356 U.S. 309 (1958).........................................................................................8

*Schuette v. Coalition to Defend Affirmative Action*,
   572 U.S. 291 (2014).....................................................................................8-9

*Sea-Land Serv., Inc. v. Alaska R.R.*,
   659 F.2d 243 (D.C. Cir. 1982) ....................................................................6-7

*Sherley v. Sebelius*,
   644 F.3d 388 (D.C. Cir. 2011) ......................................................................10

*Steel Co. v. Citizens for a Better Env't.*,
  523 U.S. 83 (1998)................................................................2, 10

*Texas v. United States*,
  523 U.S. 296 (1998)..................................................................13

*U.S. House of Representatives v. Burwell*,
  130 F. Supp. 3d 53 (D.D.C. 2015) ..........................................5, 11

*United States v. Sherwood*,
  312 U.S. 584 (1941).....................................................................6

*United States v. Students Challenging Regulatory Agency Procedures*,
  412 U.S. 669 (1973)....................................................................10

*United States v. T&W Edmier Corp.*,
  465 F.3d 764 (7th Cir. 2006) .......................................................5

*Vieth v. Jubelirer*,
  541 U.S. 267 (2004)..................................................................5-6

*Washington v. Reno*,
  35 F.3d 1093 (6th Cir. 1994) ......................................................14

*Winter v. Natural Resources Defense Council, Inc.*,
  555 U.S. 7 (2008)..............................................................9-10, 14

*Yakus v. United States*,
  321 U.S. 414 (1944)...................................................................15

## STATUTES

U.S. CONST. art. I, § 9, cl. 7 ...................................................2-3, 5, 11

U.S. CONST. art. III ...........................................................5-6, 10, 13-14

U.S. CONST. art. III, § 2 ...............................................................5

2 U.S.C. § 5571 ............................................................................5

2 U.S.C. § 5571(a) .......................................................................5

Administrative Procedure Act,
  5 U.S.C. §§ 551-706 ...........................................................2, 4, 7-8

5 U.S.C. § 551(1)(A)....................................................................4

5 U.S.C. § 701(a)(1).....................................................................7

5 U.S.C. § 701(a)(2).....................................................................7

5 U.S.C. § 702 .............................................................................4

5 U.S.C. § 702(2) .........................................................................7

5 U.S.C. § 703 .............................................................................7

5 U.S.C. § 704 .........................................................................7-8, 13

5 U.S.C. § 706(2)(B)....................................................................2

10 U.S.C. § 2801(a) ...................................................................................................13

10 U.S.C. § 2801(b) ...................................................................................................13

10 U.S.C. § 2801(c)(4) ...............................................................................................13

10 U.S.C. § 2808 .....................................................................................................2, 13

10 U.S.C. § 2808(a) ...................................................................................................13

10 U.S.C. § 284 .......................................................................................................1, 11

10 U.S.C. § 284(a) .....................................................................................................11

10 U.S.C. § 284(b)(7) .................................................................................................11

28 U.S.C. § 451 ...........................................................................................................4

28 U.S.C. § 516 ...........................................................................................................4

28 U.S.C. § 1331 ......................................................................................................2-3

28 U.S.C. § 1345 ...................................................................................................2-3, 5

National Emergencies Act,
    50 U.S.C. §§ 1601-1651 ....................................................................1-2, 5, 7-8

Pub. L. No. 94-574, § 1, 90 Stat. 2721 (1976)........................................................ 6-7

\*   Department of Defense Appropriations Act for Fiscal Year 2019,
    Pub. L. No. 115-245, div. A, § 8005,
    132 Stat. 2981, 2999 (Sept. 28, 2018)................................................1-2, 11-13

## RULES AND REGULATIONS

Fed. R. Civ. P. 65(c) ................................................................................................15

Local Rule 7(o)(5)........................................................................................................1

Fed. R. App. P. 29(a)(4)(E) .........................................................................................1

Presidential Proclamation on Declaring a National Emergency Concerning the Southern
    Border of the United States, 84 Fed. Reg. 4949 (Feb. 15, 2019).........................1

## OTHER AUTHORITIES

Kenneth Culp Davis, *Nonreviewable Administrative Action,* 96 U. Pa. L. Rev.
    749 (1948).............................................................................................................8

## IDENTITY AND INTEREST OF *AMICUS CURIAE*

*Amicus curiae* Rep. Andy Barr seeks the Court's leave to file this brief for the reasons set forth in the accompanying motion for leave to file.[1] As explained in the motion for leave to file, Rep. Barr (hereinafter, "*Amicus*") has an ongoing interest in federal immigration policy both as the Representative elected to the 116th Congress for Kentucky's Sixth Congressional District and as a citizen. For these reasons, Rep. Barr has direct interests in the issues here.

## INTRODUCTION

Acting under a party-line authorization from the Bipartisan Legal Advisory Group,[2] the current majority has filed suit against various federal Executive agencies and officers (collectively, the "Government") in the name of the United States House of Representatives (the "House") to challenge the Government's efforts to defend our southern border. Although this action relates to the Presidential Proclamation on Declaring a National Emergency Concerning the Southern Border of the United States, 84 Fed. Reg. 4949 (Feb. 15, 2019), issued under the National Emergencies Act, 50 U.S.C. §§ 1601-1651 ("NEA"), the House does not challenge the emergency declaration *per se*. Instead, the House's motion for a preliminary injunction seeks relief with respect to two aspects of Department of Defense ("DoD") funding:

- The use of § 8005 of DoD's 2019 appropriation to transfer funds for projects under 10 U.S.C. § 284. *See* DoD Appropriations Act for Fiscal Year 2019, Pub. L. 115-245, div. A,

---

[1]     Consistent with FED. R. APP. P. 29(a)(4)(E) and Local Rule 7(o)(5), counsel for movant and *amicus curiae* authored the motion and brief in whole, and no counsel for a party authored the motion or brief in whole or in part, nor did any person or entity, other than the movant/*amicus* and his counsel, make a monetary contribution to preparation or submission of the motion or brief.

[2]     *See* Compl. at 26 & n.117 (¶56) (ECF #1). As the Complaint acknowledges, the House minority argues that "the appropriate recourse provided under Article I of the U.S. Constitution is to pass legislation." *Id.*

§ 8005, 132 Stat. 2981, 2999 (Sept. 28, 2018).

- The indication of a future intent to use DoD funds under 10 U.S.C. § 2808 under NEA for border projects.

The House's third count simply reprises the first two — both of which the House premises directly on the Appropriations Clause, U.S. CONST. art. I, § 9, cl. 7 — by asserting the same claims under the Administrative Procedure Act, 5 U.S.C. §§ 551-706 ("APA"). *See* 5 U.S.C. § 706(2)(B) (concerning agency action "contrary to constitutional right, power, privilege, or immunity").

## STATEMENT OF FACTS

*Amicus* adopts the facts as stated by the Government. Gov't Memo. at 1-12 (ECF #36).

## ARGUMENT

## I.   THIS COURT LACKS JURISDICTION TO GRANT THE HOUSE'S REQUESTED RELIEF.

Federal courts are courts of limited jurisdiction. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The parties cannot confer jurisdiction by consent or waiver, *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702 (1982), and federal courts instead have the obligation to assure themselves of jurisdiction before reaching the merits. *Steel Co. v. Citizens for a Better Env't.,* 523 U.S. 83, 95 (1998). As explained below, this action suffers from several jurisdictional defects.

### A.   This Court lacks statutory subject-matter jurisdiction for this action.

The House's motion does not address this Court's statutory subject-matter jurisdiction to hear this case, but its complaint cites two bases for statutory subject-matter jurisdiction: 28 U.S.C. §§ 1331, 1345. *See* Compl. at 8 (¶10) (ECF #1). Neither purported jurisdictional basis supports

2

this action.

### 1.    Federal-question jurisdiction does not extend to settled questions.

Although the House's complaint cites the Appropriations Clause as a basis for relief, that alone does not necessarily bring this case within this Court's federal-question jurisdiction:

> A claim invoking federal-question jurisdiction under 28 U.S.C. § 1331, … may be dismissed for want of subject-matter jurisdiction if it is not colorable, *i.e.*, if it is immaterial and made solely for the purpose of obtaining jurisdiction or is wholly insubstantial and frivolous.

*Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 n.10 (2006) (interior quotation marks and citations omitted). Claims can become too insubstantial for federal review if they are "so attenuated and unsubstantial as to be absolutely devoid of merit," "wholly insubstantial," "obviously frivolous," "plainly unsubstantial," or "no longer open to discussion" based *inter alia* on controlling Supreme Court or Circuit decisions. *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974); *Ass'n of Am. Physicians & Surgeons v. Sebelius*, 746 F.3d 468, 471-72 (D.C. Cir. 2014) (applying jurisdictional dismissal based on controlling precedent to Circuit, as opposed to Supreme Court, precedent). It is settled that the "Constitution does not contemplate an active role for Congress in the supervision of officers charged with the execution of the laws it enacts." *Bowsher v. Synar*, 478 U.S. 714, 722 (1986). Thus, this action falls outside this Court's federal-question jurisdiction; the House's attempt to invoke the judicial power to supervise the Executive Branch is foreclosed by binding precedent.

### 2.    The House is not the "United States" for purposes of 28 U.S.C. § 1345.

The House also invokes this Court's jurisdiction under 28 U.S.C. § 1345, which provides original jurisdiction for "all civil actions, suits or proceedings commenced by the *United States*, or by any *agency or officer thereof expressly authorized to sue by Act of Congress*." 28 U.S.C. § 1345 (emphasis added). This jurisdictional basis does not include the House for several reasons.

First, the House is not the "United States." The House is not even the Congress of the United States; it is only one house thereof. Instead, the power and privilege of representing the United States belongs to the Department of Justice:

> Except as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is *reserved to officers of the Department of Justice, under the direction of the Attorney General*.

28 U.S.C. § 516 (emphasis added). To the extent that this is an action by the United States, *Amicus* respectfully submits that the Attorney General should dismiss it as frivolous.

Second, the House is not an officer or agency of the United States. As relevant to Title 28, the terms "department" and "agency" are defined as follows:

> The term "department" means one of the executive departments enumerated in section 1 of Title 5, unless the context shows that such term was intended to describe the executive, legislative, or judicial branches of the government.

> The term "agency" includes any department, independent establishment, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a proprietary interest, unless the context shows that such term was intended to be used in a more limited sense.

28 U.S.C. § 451. In short, an agency means an Executive-Branch entity. That, obviously, does not include the House, the Congress, or even Legislative-Branch entities. *Chen v. Gen. Accounting Office*, 821 F.2d 732, 737 n.6 (D.C. Cir. 1987) (holding that Legislative-Branch entities are not "agencies"). Indeed, if the House were an agency, it would lack a cause of action under the APA. *Compare* 5 U.S.C. § 702 (giving persons an action for review) *with id.* §§ 701(2), 551(2) (excluding agencies from the definition of person); *cf. id.* § 551(1)(A) (excluding Congress from the definition of agency).

Third, even assuming *arguendo* that the House could be considered the United States or an

agency thereof, no statute expressly authorizes the House to sue the Government.[3] *See EEOC v. Hernando Bank, Inc.*, 724 F.2d 1188, 1193 n.3 (5th Cir. 1984); *United States v. T&W Edmier Corp.*, 465 F.3d 764, 765 (7th Cir. 2006); *Greider v. Woods*, 177 F.2d 1016, 1018 (10th Cir. 1949). Thus, 28 U.S.C. § 1345 does not provide subject-matter jurisdiction for this action.

### B.   This action is a non-justiciable political question.

Under Article III, federal courts cannot issue advisory opinions, *Muskrat v. United States*, 219 U.S. 346, 356-57 (1911), but must instead focus on the cases or controversies presented by affected parties before the court. U.S. CONST. art. III, § 2. "'All of the doctrines that cluster about Article III — not only standing but mootness, ripeness, political question, and the like — relate in part, and in different though overlapping ways, to … the constitutional and prudential limits to the powers of an unelected, unrepresentative judiciary in our kind of government.'" *Allen v. Wright,* 468 U.S. 737, 750 (1984) (quoting *Vander Jagt v. O'Neill,* 699 F.2d 1166, 1178-79 (D.C. Cir. 1983) (Bork, J., concurring)). The Government argues that the House lacks standing, but this Court need not reach standing to find the lack of an Article III case or controversy here.[4]

The House asks this Court to delve into areas that the NEA leaves to Congress and the President to resolve between themselves in the political process. Here, there is both "a textually demonstrable constitutional commitment of the issue to a coordinate political department" and "a

---

[3]   Although 2 U.S.C. § 5571 authorizes House counsel "to enter an appearance" on behalf of the House "for the purpose of performing the counsel's functions," "without compliance with any requirements for admission to practice before such court." 2 U.S.C. § 5571(a), that does not qualify as expressly authorizing suit.

[4]   On standing, *Amicus* agrees with *U.S. House of Representatives v. Burwell*, 130 F. Supp. 3d 53, 74-75 (D.D.C. 2015), that the House as an institution can have standing when the Executive Branch violates the Appropriations Clause. But this case is not the same as *Burwell*: Congress has not only *appropriated the funds* but also *authorized the reprogramming of those funds* by the Executive Branch if certain conditions are met.

lack of judicially discoverable and manageable standards for resolving [the case]." *Vieth v. Jubelirer,* 541 U.S. 267, 277-78 (2004) (quoting *Baker v. Carr,* 369 U.S. 186, 217 (1962)). As explained in Section I.C.1 *infra*, the lack of manageable standards for resolving this case also goes to the Court's jurisdiction under the APA's waiver of sovereign immunity. As the only unelected branch of government, courts are the *least* fit to answer such questions: "making judges supreme arbiters in political controversies … [would] dethrone [the people] and [make them] lose one of their … invaluable birthrights." *Luther v. Borden,* 48 U.S. 1, 52-53 (1849). Accordingly, *Amicus* respectfully submits that this Court should dismiss this litigation and leave this matter for the political branches to resolve politically, not in court.

## C.   The United States has not waived sovereign immunity for this action.

In addition to the lack of Article III jurisdiction, these actions also fall outside the scope of the APA's waiver of sovereign immunity and thus are subject to an independent jurisdictional bar. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Sovereign immunity is jurisdictional in nature"). Accordingly, this Court must consider immunity, even if the Government did not raise it.

"The United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586 (1941). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit," without regard to any perceived unfairness, inefficiency, or inequity. *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999). Moreover, the scope of such waivers is strictly construed in favor of the sovereign. *Lane v. Pena*, 518 U.S. 187, 192 (1996). As relevant here, the 1976 APA amendments to 5 U.S.C. § 702[5] "*eliminat[ed]* the sovereign immunity defense in *all equitable actions* for specific relief against a

---

[5]       PUB. L. NO. 94-574, § 1, 90 Stat. 2721 (1976).

Federal agency or officer acting in an official capacity." *Sea-Land Serv., Inc. v. Alaska R.R.*, 659 F.2d 243, 244 (D.C. Cir. 1982) (quoting S. REP. NO. 996, 94th Cong., 2d Sess. 8 (1976); H.R. REP. NO. 1656, 94th Cong., 2d Sess. 9 (1976), 1976 U.S. Code Cong. & Admin. News 6121, 6129) (R.B. Ginsburg, J.). But that waiver has several restrictions that preclude review *in this action*.[6] Specifically, the APA excludes review for "statutes [that] preclude judicial review" and those that commit agency action to agency discretion. 5 U.S.C. §§ 701(a)(1)-(2), 703. In addition, the waiver of immunity extends only to actions made reviewable by statute and to *final* actions for which there is no other adequate remedy in court. 5 U.S.C. § 704.

## 1. Congress has not enacted judicially manageable standards to review this matter.

As relevant here, the APA excludes review for "statutes [that] preclude judicial review," those that commit agency action to agency discretion, and ones with "special statutory review." 5 U.S.C. §§ 701(a)(1)-(2), 703. The House's action falls outside the APA's waiver of sovereign immunity because the defendants' actions are committed to agency discretion.

Judicial review is precluded "to the extent that … agency action is committed to agency discretion by law." 5 U.S.C. § 702(2); *accord id.* § 701(a)(2). One sign that Congress has committed an issue to executive officers' discretion is when a reviewing court would have "no law to apply" in reviewing the agency action. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

---

[6]   In addition to the generally applicable limits in the APA's waiver of sovereign immunity, the NEA also provides that "[n]o law enacted after September 14, 1976, shall supersede [the NEA] unless it does so in specific terms, referring to [the NEA], and declaring that the new law supersedes the provisions of [the NEA]." 50 U.S.C. § 1621(b). The APA's waiver was enacted after September 14, 1976, *see* PUB. L. NO. 94-574, 90 Stat. at 2721, and does not supersede the NEA expressly.

Similarly, "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney,* 470 U.S. 821, 830 (1985). Indeed, this principle predates the APA, *Gray v. Powell,* 314 U.S. 402, 412 (1941), and forms a "common law" of "nonreviewability." Kenneth Culp Davis, *Nonreviewable Administrative Action,* 96 U. PA. L. REV. 749, 750-51 (1948). Review is particularly outside judicial expertise when, as here, "the duty to act turns on matters of doubtful or highly debatable inference from large or loose statutory terms." *Panama Canal Co. v. Grace Line, Inc.,* 356 U.S. 309, 318 (1958). Alternatively, the lack of judicially manageable standards provides a basis for rejecting the claims here as non-justiciable political questions. *See Vieth,* 541 U.S. at 277; Section I.B, *supra*.

### 2. Some of the challenged actions are not final and, thus, not currently subject to judicial review.

The Government has argued that the NEA displaces APA review, but even if the Court were to reject that argument, the NEA plainly does not place presidential actions within the APA's ambit by making them *reviewable by statute*. *See* 5 U.S.C. § 704. Thus, for these actions to be reviewable under the APA, the House must point to a "final agency action for which there is no other adequate remedy in a court." *Id.* Without either a statutorily reviewable action or a final action with no adequate remedy, this Court lacks authority to review the Government's actions. *Council of and for the Blind of Delaware County Valley, Inc., v. Regan,* 709 F.2d 1521, 1531 (D.C. Cir. 1983) (*en banc*). To the extent that the Government's actions are not final, any judicial review must await final agency action.

### 3. Sovereign immunity protects our democracy from government by judicial diktat.

Allowing the House's gambit to succeed here would undermine our system of government, which requires the political branches to resolve political issues. *Schuette v. Coalition to Defend*

*Affirmative Action*, 572 U.S. 291, 311-12 (2014). "'The principle of immunity from litigation assures the states and the nation from unanticipated intervention in the processes of government.'" *Alden v. Maine*, 527 U.S. 706, 750 (1999) (quoting *Great Northern Life Ins. Co. v. Read*, 322 U.S. 47, 53 (1944)). As *Read* explained, waivers of immunity must be limited to the terms of the waiver to avoid the "crippling interferences" of government-by-lawsuit:

> The history of sovereign immunity and the practical necessity of unfettered freedom for government from crippling interferences require a restriction of suability to the terms of the consent, as to persons, courts and procedures.

*Read*, 322 U.S. 53-54. To its credit, the United States — acting through Congress — has waived its sovereign immunity for many suits against the sovereign, but the judiciary lacks jurisdiction to extend that waiver beyond its express terms: "'It needs no argument to show that the political power cannot be thus ousted of its jurisdiction and the judiciary set in its place.'" *Alden*, 527 U.S. at 751 (quoting *Louisiana v. Jumel*, 107 U.S. 711, 727-28 (1883)). Sovereign immunity compels this Court to reject the plaintiff's proposed invasion of the Government's lawful acts.

Amicus respectfully submits that this Court should look past the House majority's specious — and partisan — invocation of *the House's* institutional prerogatives and recognize what the House majority is, in fact, trying to do. This lawsuit seeks nothing less than to enlist the judiciary to recognize a one-house repeal of the prior legislation that authorizes the Government's actions. If the one-house veto violates the Constitution, *INS v. Chadha,* 462 U.S. 919, 946 (1983) (legislation requires bicameralism and presentment), then a one-house repeal certainly does.

## II.     THE HOUSE DOES NOT MEET THE *WINTER* CRITERIA FOR A PRELIMINARY INJUNCTION.

To establish an entitlement to interim relief, a plaintiff must show a likelihood of prevailing and irreparable harm, as well as that the balance of equities and the public interest favor the plaintiff. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). Before

reaching those criteria, however, a federal court first must establish its jurisdiction. *Steel Co., * 523 U.S. at 95; *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983) (holding that a plaintiff must establish Article III jurisdiction to obtain interim relief). Alternatively, a court could view the jurisdictional issues as relating to a plaintiff's likelihood of prevailing. However it parses jurisdiction and the merits, this Court should deny the House's motion because the House cannot meet any of the *Winter* factors.

A.       **The House is unlikely to prevail on the merits.**

The most important — and potentially independently dispositive — *Winter* criterion is the movant's likelihood of prevailing on the merits. *See Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011). Here, the House is unlikely to prevail on either of its two claims.

1.       **This Court lacks jurisdiction to rule for the House on the merits.**

As previously explained, this Court lacks jurisdiction to rule for the House on any of the claims on which the House seeks interim relief. *See* Section I, *supra*. "Absent an adequate jurisdictional basis for the Court's consideration of the merits, there is *no likelihood* that the Plaintiff will prevail on the merits." *Herwald v. Schweiker*, 658 F.2d 359, 363 (5th Cir. 1981) (emphasis added); *accord Nat'l Wildlife Fed'n v. Burford*, 835 F.2d 305, 328 (D.C. Cir. 1987) (a "plaintiff in this context must carry its affirmative burden of showing a likelihood of success on the merits," which "necessarily includes a likelihood of the court's *reaching* the merits, which in turn depends on a likelihood that plaintiff has standing") (Williams, J., concurring and dissenting) (emphasis in original). Given the lack of jurisdiction, the House cannot obtain a preliminary injunction:

> We need not reach the issue whether … the District Court was justified in issuing a preliminary injunction, because we have concluded that the court lacked jurisdiction to enter an injunction in any event.

*United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 690 (1973).

Accordingly, this Court should deny the House's motion for interim relief and dismiss this action.

### 2.  The House is unlikely to prevail on its claims under § 8005.

To the extent that it reaches the merits of the House's constitutional and statutory claims under § 8005, the Court should reject those claims. Significantly, the House implicitly concedes that the Government may build border barriers under § 284;[7] the House argues only that the Government cannot transfer appropriated funds under § 8005. As explained below, the House is wrong.

The constitutional claim does not require much thought: The Government has dealt exclusively with appropriated funds and the statutorily permitted transfer of appropriated funds, so the Government has not violated the Appropriations Clause. The Court cannot — as the House requests — import the House's *statutory* arguments into the constitutional claim. *See* Gov't Memo. at 42-44 (citing *Dalton v. Specter*, 511 U.S. 462, 473 (1994)); *accord Campbell v. Clinton*, 203 F.3d 19, 22 (D. C. Cir. 2000); *Burwell*, 130 F. Supp. 3d at 74-75. Congress has appropriated the funds in question and authorized the Executive Branch to reprogram those funds. Accordingly, the House's constitutional argument on § 8005 lacks merit.

As the Government explains, the House raises three statutory arguments against the § 8005 transfers: (1) the transfers are not for unforeseen circumstances, (2) the transfers violate § 8005 because the House denied the Executive Branch these funds, and (3) § 8005 does not authorize transfers for military construction. *Compare* House Memo. at 29-34 (ECF #17) *with* Gov't Memo.

---

[7]  Specifically, funds under § 284 are available for "the counterdrug activities … of any other department or agency of the Federal Government," 10 U.S.C. § 284(a), expressly including "[c]onstruction of roads and fences and installation of lighting to block drug smuggling corridors across international boundaries of the United States." *Id.* § 284(b)(7). Insofar as a border barrier falls within § 284(b)(7)'s ambit as a fence to block smuggling corridors across the border, that ends the inquiry with respect to § 284 funds.

at 46-51. *Amicus* respectfully submits that the Government handily dispatches the House's arguments by showing that the Department of Homeland Security ("DHS") requested DoD's assistance months after Congress enacted the DoD appropriation, appropriating DHS $1.375 billion for border-wall construction did not repeal by implication DoD's separate, existing authority, and § 8005 does not limit transfers for military construction projects (as the Government's historical examples show). *Amicus* makes only two additional points to bolster the Government's statutory arguments.

First, with respect to repeals by implication, the Supreme Court recently has explained that a court will not presume repeal "unless the intention of the legislature to repeal is clear and manifest" and "unless the later statute expressly contradicts the original act or … such a construction is absolutely necessary in order that the words of the later statute shall have any meaning at all." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 662 (2007) (interior alterations, citations, and quotation marks omitted). Given its silence on DoD transfers and expenditures for border-wall funding, the appropriation statute that the House would have deny DoD its pre-existing statutory authority does nothing of the sort.

Second, with respect to military construction and § 8005, *Amicus* respectfully submits that the House misreads § 8005. That statute provides that DoD may transfer "funds made available … to [DoD] for military functions (except military construction) between such appropriations or funds … to be merged with and to be available for the same purposes, and for the same time period, as the appropriation or fund to which transferred." PUB. L. NO. 115-245, div. A, § 8005, 132 Stat. at 2999. The military-construction exception applies to the fund or appropriation *from which* DoD transfers money, not to the fund or appropriation *to which* DoD transfers money. In other words, § 8005 allows transfer *to* military construction and restricts transfer *from* military construction. As

such, § 8005 does limit the transfer of funds for military construction, as the Government's historical examples show. Gov't Memo. at 50. The House's statutory arguments on § 8005 accordingly lack merit.

### 3. The House is unlikely to prevail under § 2808.

The constitutional arguments for funds under **§** 2808 are the same as the arguments for funds under § 8005, *see* Section II.A.2, *supra*, but the statutory arguments differ. While *Amicus* supports the Government's plans under § 2808, those plans are not justiciable that this time because those plans have not been reduced to a final agency action. *See* 5 U.S.C. § 704; Section I.C.2, *supra*. Under Article III, those plans either are not ripe, *Texas v. United States*, 523 U.S. 296, 300 (1998) ("[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all") (internal quotations and citations omitted), or they are insufficiently concrete: "'some day' intentions — without any description of concrete plans, or indeed even any specification of when the some day will be — do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992). Either way, it is premature to reach the merits: Nothing has happened yet.

By way of background, funds under § 2808 are available during declared emergencies for "military construction projects," 10 U.S.C. § 2808(a), which are defined to "include[] all military construction work," *id.* § 2801(b), which is defined to "include[] any construction, development, conversion, or extension of any kind carried out with respect to a military installation, whether to satisfy temporary or permanent requirements, or any acquisition of land or construction of a defense access road." *Id.* § 2801(a). In turn, "military installation" is defined as "a base, camp, post, station, yard, center, or other activity under the jurisdiction of the Secretary of a military department." *Id.* § 2801(c)(4). *Amicus* respectfully submits that a border barrier would meet these definitions. If the Army were sent to the border, its activity there would be under the jurisdiction

13

of the Secretary of the Army, and the construction of a border barrier would be "construction" "with respect to [the] military installation" consisting of the Army's activity. But until there is a specific deployment, supported by a specific construction project, this Court has nothing to review.

**B.      The House will not suffer irreparable harm.**

The second *Winter* criterion is the plaintiff's irreparable injury, in the absence of interim relief. Injuries that qualify as sufficiently immediate under Article III can nonetheless fail to qualify under the higher bar for irreparable harm, *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149-50, 162 (2010), and the absence of jurisdiction "negates giving controlling consideration to the irreparable harm." *Heckler v. Lopez*, 464 U.S. 879, 886 (1983) (Brennan, J., dissenting from the denial of motion to vacate the Circuit Justice's stay). Thus, the House cannot meet its burden of demonstrating irreparable harm.

**C.      The balance of equities favors the Government.**

The balance of equities tips in the Government's favor for two reasons. First, the Government's merits advantage tips the equities in its favor. *See* Section II.A, *supra*. Second, the House's tenuous interest — if it is even cognizable, *see* Sections I.B, *supra* — undercuts its ability to assert a countervailing form of irreparable harm. *See* Section II.B, *supra*. Consequently, the balance of equities tips decidedly in the Government's favor.

**D.      The public interest favors the Government.**

The last stay criterion is the public interest. Where the parties dispute the lawfulness of government programs, this last criterion collapses into the merits. *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994). If the Court agrees with the Government on the merits, the public interest will tilt decidedly toward the Government: "It is in the public interest that federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of … governments in carrying out their domestic policy." *Burford v. Sun Oil Co.,*

14

319 U.S. 315, 318 (1943). In public-injury cases, equitable relief that affects competing public interests "has never been regarded as strictly a matter of right, even though irreparable injury may otherwise result to the plaintiff" because courts also consider adverse effects on the public interest. *Yakus v. United States*, 321 U.S. 414, 440 (1944). The public interest lies in ameliorating the humanitarian and security crises at the border — as demonstrated by the President's declaration of an emergency. For its part, the House majority seems equally motivated by open-border policies that created the crisis and a petulant, partisan unwillingness to work with the President. This Court should reject the House's attempt to set immigration policy by litigation and to nullify the duly enacted legislation under which the Government has operated.

## III.   THE HOUSE IS NOT ENTITLED TO A PRELIMINARY INJUNCTION WITHOUT ADDRESSING THE ISSUE OF A SECURITY BOND.

Perhaps operating under the false impression that it constitutes the "United States" or an agency thereof for purposes of Title 28 (and thus the Federal Rules of Civil Procedure), the House demands a "preliminary injunction [that] shall take effect immediately," Proposed Order at 2 (ECF #17-2), without addressing the security bond that Rule 65(c) requires:

> The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. *The United States, its officers, and its agencies are not required to give security.*

FED. R. CIV. P. 65(c) (emphasis added). As explained, however, the House is not the United States or an agency thereof. *See* Section I.A.2, *supra*. If the House is subject to Rule 65(c), *Amicus* respectfully submits that the Court should hear briefing on the appropriate security for the House to post to address the possibility that a preliminary injunction should later be deemed invalid. In the absence of a sufficient showing or bond, Rule 65(c) precludes an injunction's taking effect.

## CONCLUSION

For the foregoing reasons and those cited by the Government, this Court should deny the

House's motion for a preliminary injunction.

Dated: May 14, 2019                         Respectfully submitted,

                                            /s/ Lawrence J. Joseph
                                            _____
Christopher J. Hajec                        Lawrence J. Joseph, D.C. Bar No. 464777
Immigration Reform Law Institute            1250 Connecticut Av NW Suite 700-1A
25 Massachusetts Ave. NW, Suite 335         Washington, DC 20036
Washington, DC 20001                        Telephone: (202) 355-9452
Telephone: (202) 232-5590                   Facsimile: (202) 318-2254
chajec@irli.org                             ljoseph@larryjoseph.com

                                            *Counsel for Rep. Andy Barr*